EOD
03/30/2010

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KENNETH MARSTON GOOD, | § | CASE NO. 08-40955 |
| KG LEGACY OZARKS, LLC, | § | JOINTLY ADMINISTERED |
| LEGACY CAPITAL INVESTMENTS, LLC, | § | |
| KG LEGACY PREMIER, LLC, | § | CHAPTER 11 |
| LMI LBL, LLC, | § | |
| LMI 1 NEW, LP, | § | |
| KG LEGACY JOSEY, LLC, | § | |
| LMI 1 NEW PARKWAY, L.P., | § | |
| | § | |
| DEBTORS. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the objection of Legacy Capital Investments, LLC ("LCI") to the secured claim of RMR Investments, Inc. ("RMR"). Prior to the hearing on the objection, which was continued by agreement of the parties, RMR filed a motion for summary judgment. *See* FED. R. BANKR. P. 7056 and 9014. In its motion, RMR argues that LCI is barred from objecting to its claim on the basis that it is undersecured. The Court heard the motion on January 15, 2010. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052 and 9014.

### I. JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). The Court may enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), and (O).

1

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure (the "Federal Rules"), as adopted and applied to this matter by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The entry of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)).  If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)).

In this case, the parties have essentially stipulated that there is no factual dispute in need of resolution and have presented opposing arguments based upon the application of appropriate law.  For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *See, e.g., Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995).  RMR's motion, LCI's response, and the record of this case contain the following body of uncontested facts.

2

## III. RELEVANT BACKGROUND

The above-styled debtors each filed separate petitions for relief under Chapter 11 of the Code. The Court has jointly administered their cases. There is no dispute that RMR has a claim against LCI secured by approximately 86 acres of real estate located in Flower Mound, Texas, as well as the mineral interests underlying the real estate. RMR also has an unsecured claim against Kenneth Good based on his guaranty of LCI's obligations.

RMR's claim against LCI arises from a promissory note in the principle amount of $7,860,000, which matured by its terms on June 27, 2008. LCI was in default of its obligations to RMR when it filed for bankruptcy protection, and LCI filed its petition only a few weeks prior to the maturity date (on June 3, 2008) of the note. In its bankruptcy schedules, which LCI submitted to this Court under penalty of perjury, LCI listed RMR's claim in the amount of $7,931,386.48 as a non-contingent, liquidated, and undisputed claim. *See* FED. R. BANKR. P. 1008 (requiring all schedules to be verified as provided in 28 U.S.C. § 1746). Mr. Good listed RMR's claim for $7,760,000 in his bankruptcy schedules, designating the claim as a contingent guaranty claim.

### A. The Confirmation Battle

The debtors filed their original, joint plan of reorganization on August 25, 2008. In their original plan, the debtors proposed to fund the plan by developing and selling the mineral interests underlying the 86 acres in Flower Mound. Although the bankruptcy schedules filed by LCI indicated that it was a solvent

3

entity (*i.e.*, its listed assets exceeded its liabilities), LCI proposed to repay only the

principle amount of RMR's claim at less than its contractual rate of interest.  The

joint plan also provided that Mr. Good would retain his equity interests in the

reorganized debtors.

RMR asserted numerous, substantive objections to the joint plan of

reorganization.  RMR also filed a motion to convert LCI's case to Chapter 7 on

October 17, 2008, arguing that LCI had inflated the value of its assets and that its

assets, in fact, were declining in value.  In addition, RMR filed a motion seeking

relief from the automatic stay for "cause" on October 24, 2008.[1]

LCI opposed RMR's motion to convert as well as its motion for relief from

the automatic stay.  LCI argued in its opposition to the motion for relief from the

stay that "cause" did not exist, because RMR's own appraisal showed that the

value of RMR's collateral was $11,500,000.  Thus, LCI argued that RMR was

adequately protected by a large "equity cushion" in its collateral.  The Court

scheduled RMR's motions to be heard on December 16, 2008.

The debtors amended their reorganization plan several times in response to

the objections of RMR and other creditors.  RMR voted its secured claim against

LCI's plan and its unsecured guaranty claim against Mr. Good's plan.  On

December 9, 2008, the Court considered confirmation of the debtors' proposed

plan, as amended.  RMR appeared and opposed confirmation.  The parties

---

[1] Section 362(d) provides in pertinent part: "On request of a party in interest …, the court shall grant relief from the stay … (1) for cause, including the lack of adequate protection of an interest in property of such party in interest …."  11 U.S.C. § 362(d)(1).

presented arguments and evidence, and, at the conclusion of the hearing, the Court announced that she would rule on the record on January 27, 2009.

However, on December 17, 2008, the debtors filed a fourth amendment to their plan of reorganization. The amendment related to the treatment of what it described as RMR's "allowed secured claim." In particular, the fourth and final amendment to the plan removed the provisions for developing the mineral interests in which RMR had a secured interest. The amendment, instead, provided that LCI would retain RMR's collateral and that RMR would release its secured interest in portions of the 86 acres for certain prices as buyers were found, but in no event would RMR's remaining collateral be worth less than 110% of RMR's remaining secured claim. The amendment further provided that RMR would retain its right to credit bid in accordance with § 363(k) of the Code. LCI thereby sought to provide RMR with the "indubitable equivalent," *see* 11 U.S.C. § 1129(b)(2)(A)(iii), of its secured claim.

RMR objected to LCI's latest amendment of its plan, which the Court scheduled for a continued confirmation hearing for January 27, 2009. At the continued hearing, LCI again took the position that RMR was oversecured. LCI argued that its plan was feasible based on, among other things, valuations of the mineral interests underlying the 86 acres in Flower Mound. Although LCI and the other debtors claimed that their assets exceeded their liabilities, they did not propose to pay interest on general unsecured claims as required by §§ 726(a)(5) and 1129(a)(7) of the Code. At the conclusion of the hearing, the Court

announced that she would confirm the proposed plan provided that the debtors modified their joint plan to provide for the payment of interest to unsecured creditors following the effective date of the plan.

On February 19, 2009, the Court entered a written order confirming the debtors' joint plan.  RMR timely filed a motion for reconsideration, arguing that it should have received its contractual rate of interest as an oversecured creditor. The Court entered a Memorandum Opinion and Order on April 13, 2009, granting RMR's motion and vacating the confirmation order as it related to LCI's treatment of RMR.  In light of the Court's ruling, RMR withdrew its still-pending motion for relief from the stay.

The parties subsequently sought reconsideration or clarification of the Court's April 13th Order.  The Court heard these and other motions on May 20, 2009, and issued a Memorandum Opinion and Order on May 21, 2009.  As the Court explained in its May 21st Memorandum Opinion, the evidence and arguments presented at the hearing reflected that conditions had worsened for the debtors since the confirmation hearing.  The debtors had released most of the real estate listed in their joint plan in response to motions for relief from the automatic stay filed by their creditors.  With respect to the remaining secured creditors, including RMR, the debtors took the position that they were not required to make any of the payments described in the confirmed plan, because the "confirmation

order"[2] was not yet a "final order,"[3] and the "effective date"[4] had not yet occurred. In light of the debtors' interpretation of the effective date of the plan, the Court *sua sponte* raised the issue of whether it had erred in determining the plan was feasible. The Court scheduled a hearing for May 29, 2009, to reconsider the issue of feasibility.

At the hearing on May 29, 2009, the parties announced that they had reached an agreement. The debtors represented to the Court that they would treat the order confirming the plan as having become final on May 21, 2009, and that they would file a notice setting an effective date of the plan to occur no later than June 20, 2009. The parties also announced that LCI had agreed to amend its plan to provide that RMR would receive the contract rate of interest; LCI, however, announced that it might appeal with respect to the interest rate issue. The Court

---

[2] In section 1.17 of their confirmed plan, the debtors defined the "Confirmation Order" as the "Final Order confirming this Plan."

[3] In section 1.32 of their confirmed plan, the Debtors defined the "Final Order" as follows:

Final Order means an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction, that has not been amended, modified or reversed and as to which (i) no stay is in effect, (ii) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending or, (iii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument shall have expired.

[4] Section 1.26 of the confirmed plan defined the "Effective Date" as follows:

Effective Date means the date on which the Debtors take the steps necessary to effectuate the Plan, which date is not later than 30 days after the date of entry of the Confirmation Order. Notice of occurrence of the Effective Date shall be filed herein by the Debtors.

entered an order setting forth the parties' agreement on June 5, 2009.[5]  On June 17, 2009, the debtors filed a notice that the "effective date" of their reorganization plan would be June 20, 2009.

### B. LCI's Objection to RMR's Claims

RMR filed claims in the bankruptcy cases of Mr. Good and LCI.  RMR filed proof of its unsecured claim against Mr. Good in the total amount of $7,776,141.93 on August 6, 2008, which the Court assigned claim number 18. RMR states on the proof of claim form that its claim against Mr. Good is based on a guaranty of LCI's obligations.

RMR filed proof of its secured claim against LCI in the total amount of $7,951,269.58 on October 14, 2008, which the Court assigned claim number 13.[6] On the proof of claim form, RMR stated that the value of the property securing its claim was $11,500,000.  RMR amended its claim against LCI on March 13, 2009. The amended claim stated that the total amount owed as of February 19, 2009, was $9,584,829.95, which included interest at the contractual rate, late charges, and other fees.  The amended claim also stated that the value of the property securing RMR's claim was $9,840,000.

On June 30, 2009, LCI objected to RMR's amended claim.  LCI seeks to value RMR's secured claim as of the "effective date" as that term is defined in its plan – June 20, 2009.  LCI alleges that the actual value of the property securing

---

[5] LCI has appealed the June 5th order, but did not seek, or obtain, a stay pending appeal.

[6] RMR amended its claim the next day to add several documents to the list of documents upon which its claim is based.

RMR's claim was no more than $3,800,000 as of the "effective date" based on the affidavit of Kenneth Good, who is LCI's sole manager, and a new appraisal dated June 2009. Since RMR was undersecured as of the "effective date," LCI further objects to inclusion of post-petition interest and fees in RMR's claim.

### C. RMR's Motion for Summary Judgment

In its motion for summary judgment, RMR argues that LCI should not be allowed to use the claim objection process to avoid the ramifications of its defaults under the plan. There is no dispute that LCI has not made quarterly interests payments to RMR at the contract rate but, instead, at the much lower interest rate set forth in the original confirmation order. There is likewise no dispute that LCI did not seek, or obtain, a stay pending its appeal of the Court's decision reconsidering its original confirmation order and requiring LCI to pay interest to RMR at the contract rate. RMR argues that LCI's objection to its claim should be dismissed so that RMR can use any remedies to which it is entitled under the law as a result of LCI's post-confirmation default.

In addition, RMR asserts that this Court valued its collateral as part of the confirmation of the debtors' plan in order for LCI to "cram down" its plan over RMR's objection. RMR argues that LCI is bound by the treatment of RMR as an oversecured creditor at the confirmation hearing. LCI, in turn, argues that RMR is bound by the plan's definition of the "effective date." LCI further argues that it is entitled to challenge the value of RMR's collateral as part of its objection to RMR's claim.

## IV. LEGAL DISCUSSION

The parties' arguments involve the interplay among numerous provisions of the Code. In order to place its analysis of their dispute in context, the Court must "'begin at the beginning … and go on till [we] come to the end: then stop.'" Lewis Carroll, ALICE'S ADVENTURES IN WONDERLAND (said by the King to the White Rabbit). Bankruptcy cases begin with the filing of a petition. The petition date is critical to the formation of the bankruptcy estate, *see* 11 U.S.C. § 541(a), and the rights and responsibilities of debtors and creditors in bankruptcy are keyed to this date.

### A. The Bankruptcy Bargain

Among other things, the filing of a petition triggers an "automatic stay" of actions against the debtor and property of the bankruptcy estate. *See* 11 U.S.C. § 362(a). The purpose of the automatic stay is "to provide a debtor with a breathing spell and prevent harassment and frustration of rehabilitation efforts through pursuit by creditors and to assemble all the creditors and their claims into the Bankruptcy Court for a single organized proceeding." *In the Matter of Kozak Farms, Inc.,* 47 B.R. 399, 402-03 (W.D. Mo. 1985). The automatic stay is designed to protect the debtor by effecting "an immediate freeze of the status quo at the outset of the [C]hapter 11 proceedings." *Interstate Commerce Comm'n v. Holmes Transp., Inc.,* 931 F.2d 984, 988 (1st Cir. 1991).

However, the protection afforded to a debtor by the automatic stay is only one side of the bankruptcy bargain. While the automatic stay preserves the status

quo for debtors, adequate protection preserves the status quo for secured creditors.

The Code's adequate protection provisions are available to protect a secured

creditor from losses it might incur due to depreciation of the collateral's value

during the period from the petition date through the termination of the automatic

stay. *See Chase Manhattan Bank USA v. Stembridge (In re Stembridge)*, 394 F.3d

383, 387 (5th Cir. 2004).

A debtor must provide a secured creditor with adequate protection in order

to maintain the automatic stay. *See* 11 U.S.C. § 362(d)(1).[7] The Code does not

exclusively define the term "adequate protection," but states that adequate

protection may be provided by "requiring the trustee to make a cash payment or

periodic cash payments … to the extent that the stay under [§] 362 … results in a

decrease in the value of such entity's interest in such property." *Id.* at 361(1). A

secured creditor is entitled to adequate protection of the value of its collateral as of

the petition date. *See In re Stembridge*, 394 F.3d at 387. *See also, e.g., Orix

Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.),* 54 F.3d

722, 729-30 (11th Cir. 1995); *In re Cook,* 205 B.R. 437, 441 (Bankr. N.D. Fla.

1997); *In re Cason,* 190 B.R. 917, 924 (Bankr. N.D. Ala. 1995).

The debtor's ultimate goal in a Chapter 11 case is a successful

reorganization through a plan confirmed by the Court. Unlike negotiations outside

---

[7] The Court may lift the stay for cause, including a lack of adequate protection, at any time during the bankruptcy case. *See* 11 U.S.C. § 362(d)(1). If the stay is not lifted by order of the Court, the Code provides for its termination at different points in time, depending on the nature of the stayed action. With respect to acts against property of the estate, the stay expires when the property is no longer part of the estate (*e.g.*, where the property has been exempted or sold). *See id.* at § 362(c)(1). With respect to any other act, the stay expires when the bankruptcy case is closed or dismissed, or when a discharge is granted or denied, whichever is earlier. *See id.* at § 362(c)(2).

of bankruptcy, a debtor need not obtain the consent of all of its creditors in order to restructure its debts through bankruptcy. A bankruptcy court can confirm a reorganization plan if it is accepted by the holders of at least two thirds in amount and more than one half in number of each class of claims impaired by the plan. *See* 11 U.S.C. §§ 1129(a)(8), 1126(c), 1126(d). On the other hand, the Code provides creditors with certain protections, such as the right to receive payment in full of administrative priority claims on the effective date of the plan (§ 1129(a)(9)), and expectations, such as the requirement that the plan must provide creditors with at least as much as they would receive in a Chapter 7 liquidation (§ 1129(a)(7)), and the requirement that the plan must be feasible (§ 1129(a)(11)).

In order to confirm its plan over the objection of a non-consenting class of creditors, the debtor must obtain the consent of at least one class of creditors and comply with the cramdown provisions of § 1129(b). Section 1129(b) requires that, in order to confirm a cramdown plan, the bankruptcy court must find that the plan is "fair and equitable," that is, the plan must provide that, with respect to any nonaccepting class, no junior class will receive or retain any value under the plan unless or until such nonaccepting class is paid in full. In addition, with respect to an objecting class of secured claims, the claim holders must retain their liens and must receive deferred cash payments of at least the value of the property securing their claims. *See* 11 U.S.C. § 1129(b)(2)(A).

Except in cases involving individual debtors, the Code keys the Chapter 11 debtor's discharge and the corresponding termination of the automatic stay to the

entry of the confirmation order.  *See* 11 U.S.C. §§ 362(c)(1), 1141(d).[8]

"Confirmation of the plan marks the beginning of the reorganized debtor's new

financial life.  New legal relationships are established and old ones are modified or

terminated."  *In re Valley Park Group, Inc.,* 96 B.R. 16, 24 (Bankr. N.D. N.Y.

1989) (citation omitted).  "Once the bankruptcy court confirms a plan of

reorganization, the debtor may go about its business without further supervision or

approval.  The [debtor] also is without the *protection* of the bankruptcy court...

Formerly a ward of the court, the debtor is emancipated by [confirmation of] the

plan of reorganization."  *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir.

1991) (emphasis in original).

### B. LCI's Objection to RMR's Claim

Against this backdrop, the Court turns to RMR's request for summary

judgment denying LCI's objection to the value of the collateral securing RMR's

claim.  The Court first addresses RMR's argument that this matter should be

converted to an adversary proceeding.  The Court next addresses the valuation of a

secured claim for purposes of confirmation.  Finally, the Court addresses whether

LCI is precluded from seeking to reduce the value of RMR's secured claim under

the circumstances of this case.

---

[8] Confirmation of a Chapter 11 plan vests all property of the estate in the debtor, absent a contrary plan provision.  *See* 11 U.S.C. § 1141(b).  The bankruptcy estate, therefore, ceases to exist upon confirmation.  In cases involving non-individual debtors, absent a contrary plan provision, confirmation of a Chapter 11 plan also discharges pre-confirmation debt and substitutes the obligations set forth in the plan. *See* 11 U.S.C. § 1141(a), (d).

### 1. An Adversary Proceeding Is Not Required

As a threshold issue, RMR argues that this contested matter should be converted to an adversary proceeding. Bankruptcy Rule 7001(2) generally provides that an adversary proceeding is required in order to void a lien. *See* FED. R. BANKR. PROC. 7001(2). LCI argues in response that it is seeking to value the collateral securing RMR's secured claim pursuant to § 506(a), not to challenge the validity, priority or extent of RMR's lien.

As this Court explained in *Litton v. Eads*, 417 B.R. 728, 740 (Bankr. E.D. Tex. 2009), "[o]ne of the underlying purposes of Bankruptcy Rule 7001(2), as incorporated into the claims objection process by Bankruptcy Rule 3007, is to afford the creditor sufficient notice that it may be deprived of an interest in property." That purpose would not be furthered in this case by converting this matter to an adversary proceeding. RMR has appeared before the Court in connection with this contested matter, and RMR is vigorously defending its claim. Moreover, this Court agrees with the holding in *In re Kleibrink*, 346 B.R 734, 753 (Bankr. N.D. Tex. 2006): "[A] motion is sufficient when the basis to avoid the lien is a [§] 506(a) valuation." Thus, the Court concludes that an adversary proceeding is not necessary to resolve the present dispute.

### 2. Value is Determined as of Confirmation

In its objection to claim, LCI argues that RMR is undersecured if RMR's collateral is valued as of June 2009. LCI's argument is based on an affidavit of Kenneth Good, which LCI attached to its objection, as well as an appraisal dated

June 2009.  At the hearing on RMR's motion for summary judgment, LCI argued that the date this Court should value RMR's claim is June 20, 2009.

Section 1129 of the Code repeatedly references the "effective date of the plan" as the date that creditors' claims are valued.  *See, e.g.,* 11 U.S.C. § 1129(a) (7)(A), (a)(7)(B), (a)(9)(A), (a)(9)(B)(i), (a)(9)(C)(i), (a)(15)(A), (b)(2)(A)(i)(II), (b)(2)(B)(i), (b)(2)(C)(i).  However, the Code does not define the "effective date of the plan."  The Court assumes that, absent any contrary definition, "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning."  *Pioneer Investment Services v. Brunswick Associates,* 507 U.S. 380, 389 (1993) (internal quotation marks omitted).  The effective date is usually understood as the "date on which the provisions of a plan of reorganization become effective and binding on the parties."  Kenneth K. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 AM. BANKR. L.J. 551, 560-61 (1995).  As the Supreme Court noted in an analogous context, a proposed reorganization plan becomes "effective" upon confirmation.  Cf: *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. –, 2010 WL 1027825 at *3 (2010) ("A proposed bankruptcy plan becomes effective upon confirmation, see §§ 1324, 1325 ….").  In Chapter 11 cases, unless the bankruptcy court orders otherwise, or an objecting party obtains a stay pending appeal, a Chapter 11 plan becomes "binding" 14 days after confirmation.  *See* 11 U.S.C. § 1141(a); FED. R. BANKR. P.

3020(e).[9]  The statutory effective date of a plan, therefore, occurs 14 days after entry of the confirmation order in most Chapter 11 cases.[10]

The Court applied this statutory effective date in the present case when determining whether or to what extent RMR was entitled to vote on the plan and when deciding the feasibility of the debtors' proposed plan, among other things. When voting issues are raised, as occurred in this case, the Court must value collateral in order to determine the secured portion of the claim for voting and eligibility purposes. *See* 11 U.S.C. § 506(d); FED. R. BANKR. P. 3018(d).  In addition, the Court must know whether or to what extent a claim is entitled to treatment as a secured claim in order to determine the amounts that the debtor is proposing to pay the claim holder under the plan, whether the claim holder is receiving the appropriate distribution under the proposed plan as required by various provisions of § 1129, and whether the plan is feasible. *Cf: In re Perdue,* 95 B.R. 475, 477 (Bankr. W.D. Ky. 1988) ("Of course, the effective date of the plan cannot be antecedent to the confirmation hearing at which the issues raised by § 1325(a)(4) are to be heard by the Court.") (quoting COLLIER ON BANKRUPTCY ¶ 1325.05(2)(a) (15th Ed.)).

Although confirmation is the key date for a bankruptcy court's analysis of

---

[9] This period was 10 days at the time of confirmation in this case.  As discussed in the Advisory Committee Notes for Bankruptcy Rule 3020, the period was enlarged to 14 days effective December 1, 2009.

[10] A Chapter 11 reorganization plan is "effective" and can be implemented – even in the face of an appeal – unless a stay is granted pending the appeal. *See, e.g., In re Manges,* 29 F.3d 1034, 1039 (5th Cir. 1994) (discussing the doctrine of equitable mootness, which authorizes an appellate court to decline review of an otherwise viable appeal of a reorganization plan when the reorganization has progressed too far for the requested relief practicably to be granted).

16

whether a plan complies with the statutory requirements of § 1129, a Chapter 11 plan may contain a different, later *contractual* effective date. The "effective date" in this context is more properly understood as the date after which the debtor plans to take certain actions described in the plan. This date may coincide with the statutory effective date, or, as in this case, the contractual effective date may occur much later than the statutory effective date. LCI has not provided the Court with authority supporting its position that the *contractual* effective date is the date this Court must value RMR's secured claim in this post-confirmation claim dispute.

### 3. The Court Determined the Value of RMR's Claim for Purposes of Feasibility and Plan Treatment at the Confirmation Hearing

The procedure for valuing a creditor's secured claim is set forth in §§ 502 and 506 of the Code. In pertinent part, § 502(a) provides:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

*See also* FED. R. BANKR. P. 3007 (providing the procedure for objecting to a proof of claim).[11] Section 506(a), which defines the limits of a claim's secured status, provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under

---

[11] Notably, § 502(j) of the Code permits the reconsideration of an allowed claim "for cause" and "according to the equities of the case." Mr. Good and LCI have not requested reconsideration of the deemed allowance of RMR's claim for purposes of plan treatment. Even if the present objection to RMR's claim could be construed as a request for reconsideration of its deemed allowance, RMR and Mr. Good failed to establish "cause" for reconsideration. *See, e.g., In re Rankin,* 141 B.R. 315, 319 (Bankr. W.D. Tex. 1992) ("[A] party seeking reconsideration of a bankruptcy court's order regarding a claim should explicitly or implicitly assert one of the grounds delineated in Rule 60(b)").

> section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. *Such value shall be determined* in light of the purpose of the valuation and of the proposed disposition or use of such property, and *in conjunction with any hearing* on such disposition or use or *on a plan affecting such creditor's interest.*

11 U.S.C. § 506(a) (emphasis added).

Here, RMR's claim against LCI reflected that it was oversecured. However, at the confirmation hearing, RMR argued that LCI had grossly inflated the value of its assets, including RMR's collateral, and that its plan was not feasible. LCI litigated the feasibility of its plan and the value of RMR's collateral by presenting evidence that RMR was oversecured. LCI proposed to fully repay RMR through the post-confirmation sale of its collateral. LCI contended that its plan could be crammed down over RMR's objection, because the plan provided RMR with the "indubitable equivalent" of its secured claim. *See* 11 U.S.C. § 1129(b)(2)(A)(iii). LCI also took the position that, since RMR was oversecured, it did not have an unsecured deficiency claim to vote in that case or entitled to protection under § 1129(b).

In connection with its present objection to RMR's claim, LCI argues that it is entitled to challenge the value of RMR's collateral as part of its objection to claim. LCI argues that the valuation of collateral is a normal part of the claims allowance process under § 506(a). Further, LCI argues that RMR is barred by the

doctrine of "*res judicata* from objecting to LCI's post-confirmation objection to RMR's claim."  LCI's Response to RMR's Motion for Summary Judgment, p. 2.

LCI's argument is correct inasmuch as the confirmed plan provided that LCI could make post-confirmation objections to the allowance of claims. However, the salient question is not whether the confirmed plan permits post-confirmation objections, but, more specifically, whether LCI is barred from asserting that the value of RMR's collateral is less than the amount of RMR's claim.  Courts generally agree that a plan may provide for post-confirmation adjustments in the size of a claim.  *See, e.g., In re Hovis,* 356 F.3d 820, 823 (7th Cir. 2004).  Nonetheless, if the confirmation of LCI's plan depended upon RMR's claim being oversecured and the Court necessarily made such a finding, then judicial estoppel would bar LCI from seeking to reduce the value of RMR's collateral for purposes of treatment under the plan.  *See id.*

Judicial estoppel is considered to be a matter of federal procedure, and federal law governs its application.  *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996).  "In this Circuit, two bases for judicial estoppel must be satisfied before a party can be estopped.  First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position."  *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citations and internal quotations omitted).  *Hall* further recognized that the Supreme Court has endorsed a third consideration -- "whether the party seeking to assert the

inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hall,* 327 F.3d at 399 (*citing New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). "Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Matter of Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

In this case, LCI's arguments in support of its present objection directly contradict the arguments and evidence presented at confirmation. The Court relied on RMR's oversecured status as of the statutory effective date in confirming LCI's plan. LCI's plan would not have been feasible if the "effective date" upon which RMR's claim was to be valued was some indeterminate date in the future.

Moreover, if RMR had been undersecured to the tune of more than $5 million, as LCI now contends, RMR would have been entitled to vote the unsecured portion of its claim along with LCI's other unsecured creditors. *See* 11 U.S.C. § 506(a); *Norwest Bank Worthington v. Ahler*s, 485 U.S. 197, 207 (1988). RMR's rejection of LCI's plan, if counted as an unsecured claim, would have prevented LCI from carrying the class of general unsecured claims.[12] In order to cram down its plan over the objection of its unsecured creditors, LCI would have been required to either satisfy the claims in full, *see* § 1129(b)(2)(B)(i), or eliminate all classes of claims junior to the dissenting class, *see* 11 U.S.C. §

---

[12] Class 19(B) consisted of the general unsecured claims against LCI. According to the Affidavit of Ashley Ellis filed in support of LCI's plan, 14 members of Class 19(B) voted in favor of the plan, and one member voted against the plan. The members voting for the plan held claims totaling $626,256.53, and the member voting against the plan held a claim in the amount of $3,584.08.

1129(b)(2)(B)(ii).  Thus, Mr. Good could not have retained his equity interest in LCI, or the $24 million dollars he projected he would receive on account of his equity interests in LCI and the other debtors, in the face of an objection by an undersecured RMR.

While the valuation of a secured creditor's collateral under § 506 of the Code is flexible and not limited to a single point in time, *see Financial Security Assurance, Inc. v. T-H New Orleans, L.P. (In re T-H New Orleans, L.P.)*, 116 F.3d 790 (5th Cir. 1997), the Fifth Circuit has rejected approaches to valuation that would unbalance the bankruptcy process by tipping it in favor of the debtor.  *Id.* at 798.  Allowing a debtor to wait several months after confirmation to define the contractual effective date of the plan, and then set that date so that its secured creditors would bear the brunt of any post-confirmation depreciation, would violate "the equitable nature of bankruptcy in seeking a balance between debtors and creditors (a debtor's right to a fresh start versus the creditor's right to the value of its claim) …." *Id.*  LCI has failed to provide this Court with any authority that Congress intended to allow it a windfall by shifting away the depreciation and risk voluntarily assumed by LCI through confirmation of its plan.  *Cf: In re T-H New Orleans, L.P.,* 188 B.R. 799, 805 (E.D. La. 1995), aff'd, 116 F.3d 790 (5th Cir. 1997) (holding that creditor who was undersecured on the petition date was undersecured for purposes of confirmation even though the value of its security had increased during the case).

For the foregoing reasons, the Court concludes that LCI is judicially and

collaterally estopped from contradicting its prior argument that RMR was oversecured for purposes of determining RMR's right to vote on the debtors' plan, feasibility, and RMR's treatment under the plan. The Court accepted this argument as a necessary part of the confirmation of LCI's plan. Moreover, LCI would derive an unfair advantage over RMR if the Court were to sustain its present objection to LCI's secured claim.

### C. Adopting the Debtors' Position Would Lead to Potentially Devastating Results for the Debtors

LCI's argument that the "effective date of the plan," as that phrase is used in the Code, is the contractual effective date would lead to absurd results if applied to the confirmed plan in this case. The debtors take the position that their plan permitted them to select any date in the future as the effective date – that is, the effective date of the plan was undetermined and infinite at the time of confirmation – and they eventually selected June 20, 2009.[13] According to the debtors' argument, the Court would have had to value RMR's collateral and make all other decisions necessary for confirmation based on some future date to be determined at the whim of the debtors after the confirmation hearing. Such an argument, if adopted, would transform this Court into an oracle who can predict the date a debtor will choose as its effective date if, as in this case, the plan allows the debtor to select the effective date after confirmation, as well as whether the proposed plan will be confirmable on that date.

---

[13] The Court expresses no opinion about whether the plan actually provides for such an effective date. It appears, based on the language of the debtors' plan, that it could be argued that the contractual effective date occurred 30 days after entry of the confirmation order.

22

LCI's argument assumes that any reduction in the value of RMR's collateral would simply create a general unsecured claim, which will be paid last (or nearly last) and discharged to the extent unpaid. This is not necessarily so. If the Court were to value the collateral securing a claim based a post-confirmation "effective date," then the claim holder could, in some cases, assert a claim against the estate for a priority administrative expense.

A secured creditor such as RMR is entitled to adequate protection of its interest in property during the pendency of the automatic stay. As the Fifth Circuit explained in *Stembridge*, the Code's "scheme of protecting the value of an asset against depreciation from the date of the filing" provides support for requiring adequate protection from the petition date through the effective date of the plan. *In re Stembridge,* 394 F.3d at 387. If the debtors' plan in this case did not become effective under the Code until June 20, 2009, then property did not vest in the debtor pursuant to the terms of the plan until that date, RMR's collateral remained property of the estate, and RMR remained stayed from taking any actions with respect to its collateral. An alleged failure of adequate protection during this period exposes the debtors to a claim for a priority administrative expense. *See* 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2). *See also, e.g., Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588-98 (9th Cir. 1993) (allowance of post-confirmation administrative expenses is unusual but permissible where the stay remains in place post-confirmation); *In re Canton Jubilee*, 253 B.R. 770, 770 (Bankr. E.D. Tex. 2000) (awarding a post-confirmation administrative expense

where the stay continued after confirmation).  "This is the tradeoff the automatic stay creates for creditors and debtors:  creditors are prevented from seizing their secured assets in order to provide debtors with "breathing room" to reorganize; in return, the creditors' present value is preserved throughout the reorganization through adequate protection (and priority of its claim)."  *In re Stembridge,* 394 F.3d at 387.

If the equity cushion touted by LCI at the confirmation hearing has disappeared, as LCI now argues, then RMR may be entitled to an administrative priority claim – a claim that LCI lacks the funds to satisfy.  *See, e.g., Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.),* 978 F.2d 1409 (5th Cir. 1992) (determining that creditor had an administrative expense claim under § 503(b) where goods supplied by the creditor had enhanced the debtor's ability to function as a going concern); *Grundy Nat'l Bank v. Rife,* 876 F.2d 361, 363-65 (4th Cir. 1989) (allowing a creditor secured in the debtor's automobiles to have an administrative expense claim for the debtor's missed payments or the diminution in value of the automobiles).  The Code requires LCI to pay administrative claims in cash, in full, as of the "effective date" unless the administrative claimant agrees to a different treatment.  *See* 11 U.S.C. § 1129(a)(9).  Under the debtors' interpretation of the statutory effective date, then, LCI could be required to pay RMR millions of dollars as of June 20, 2009.  This is potentially a much worse result for the debtors than paying RMR's fully secured claim over time.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the statutory effective date of LCI's plan is the date the confirmation order became effective under the Code and Bankruptcy Rules (*i.e.*, 10 days after entry of the confirmation order). *See* 11 U.S.C. § 1141(a); FED. R. BANKR. P. 3020(e).  The Court necessarily determined that RMR was oversecured as of confirmation, and the Court's confirmation of LCI's plan depended upon the Court's valuation of RMR's claim. The Court, therefore, concludes that RMR is entitled to a summary judgment that LCI may not collaterally attack, and is judicially estopped from challenging, the value of RMR's collateral and the amount of RMR's secured claim, for purposes of plan treatment, through a post-confirmation objection to RMR's claim against LCI.

**IT IS THEREFORE ORDERED** that RMR's motion for summary judgment is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that LCI's objection to the value of the collateral securing RMR's claim is hereby **OVERRULED.**

Signed on 03/30/2010

*Brenda T. Rhoades*                    MD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE